[No. 9979. In Bank. — August 16, 1886.]

## M. F. LEWIS, EXECUTRIX, ETC., OF NAT. LEWIS, DECEASED, APPELLANT, *v.* P. T. ADAMS, RESPONDENT.

FINDINGS — STATUTE OF LIMITATIONS. — A finding that all the allegations of the complaint are true is a sufficient finding on a plea of the statute of limitations, if the complaint contains averments showing that the statute had not run.

JOINT JUDGMENT — ACTION ON AGAINST JOINT DEBTOR — AMENDMENT — STATUTE OF LIMITATIONS. — Where an action on a judgment against several joint debtors is originally commenced against one of them alone, a subsequent amendment to the complaint, by inserting the names of the other judgment debtors as defendants, does not change the nature of the action against the original defendant, nor extend the running of the statute of limitations in his favor until the filing of the amendment.

ID. — FOREIGN JUDGMENT — REVIEW OF ERROR. — In an action on a judgment rendered in another state, error in the manner of entering the judgment will not be reviewed.

ID. — FOREIGN EXECUTRIX — MAY SUE PERSONALLY ON FOREIGN JUDGMENT. — A foreign executrix may maintain an action in this state in her individual name on a judgment recovered by her as executrix in another state on a debt due to her testator.

ID. — AVERMENTS OF OFFICIAL CAPACITY — SURPLUSAGE. — In such an action, the averments in the complaint of the official capacity of the plaintiff are mere surplusage, and may be disregarded.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial.

The action was commenced on the fifteenth day of February, 1882, by the plaintiff, as the executrix of the last will of one Nat. Lewis, against the defendant P. T. Adams, on a judgment obtained by her as such executrix in the district court of Bexar County, in the state of Texas, on the fifteenth day of March, 1877, against Adams, and Joseph Collins, James Dalrymple, and John H. Kennedy. The complaint contained allegations of the death of the plaintiff's testator, of the issuance to her by the probate court of Bexar County of letters testamentary on the will of the deceased, and of her qualification as executrix. The defendant Adams answered, alleging that the judgment was obtained on a partner-

ship demand against the judgment debtors, and pleaded the non-joinder of Collins, Dalrymple, and Kennedy. To obviate the objection of non-joinder, the plaintiff, on the 8th of July, 1884, filed an amended complaint, inserting their names as defendants. The defendant Adams answered the amended complaint by setting up the statute of limitations. The further facts are stated in the opinion of the court.

*Victor Montgomery*, and *Smith, Brown & Hutton*, for Appellant.

*Thom & Stephens*, for Respondent.

McKINSTRY, J. — The action is upon a judgment of a District Court of the state of Texas, — a court of general jurisdiction. The original complaint was filed February 15, 1882, and averred that the Texas judgment was against defendant Adams, and was given and entered March 15, 1877.

On the eighth day of July, 1884, the plaintiff amended her complaint by inserting, in the appropriate connection, the names of Joseph Collins, James Dalrymple, and John Kennedy as judgment debtors and as defendants in this action. In the present action summons was not served on Collins, Dalrymple, or Kennedy, nor did either of them appear herein. The Superior Court found in favor of the plaintiff herein against the defendant Adams, but on motion of the latter granted a new trial. From the order granting a new trial plaintiff has appealed.

The court below found " all the allegations of the complaint, as amended, are true." If the facts averred in the amended complaint would establish the conclusion that the statute had not run as against defendant Adams, the foregoing was a sufficient finding in favor of plaintiff on the issue of the statute of limitations. Ever since the decision in *Coveny* v. *Hale*, 49 Cal. 552, it has been

held that if a finding be of probative facts, from which the ultimate fact necessarily follows, it is sufficient.

There is no dispute that the finding is sustained by the evidence, but it is insisted by respondent that upon the facts as found, the judgment should have been for the defendant, and that the court below therefore properly ordered a new trial. It is urged that the foreign judgment was rendered more than five years prior to the filing of the amended complaint, and that, as the action set forth in the amendment was a different action from that sued on in the original complaint, the statute ran to the filing of the amendment.

If it should be conceded that when a trial court deduces a wrong legal conclusion from facts found, this is a ground of motion for a new trial, — as being a "decision against law" (as to which we express no opinion), the amendment did not allege a new cause of action against the defendant Adams, and there is no question here as to the running of the statute in favor of those first made defendants by the amendment. The Texas judgment was against all the defendants therein named, and if the non-joinder had not been specially pleaded, could have been introduced under the averments of the original complaint. (Code Civ. Proc., sec. 434.) As we have seen, the summons in the present action was not served on the other defendants, and if the original complaint had properly described the Texas judgment, judgment herein could have been entered against Adams alone. The liability of Adams remained the same before and after the amendment. When an action is against two or more defendants jointly liable on a contract, and the summons is served on one or more, but not on all of them, the plaintiff may proceed against those served in the same manner as if they were the only defendants. (Code Civ. Proc., sec. 414.) A judgment is a contract within the meaning of the section. (*Mahaney* v. *Penman*, 4 Duer, 606.) The amendment, so far as defendant Adams is

concerned, was merely a more complete statement of the cause of action, and related to the commencement of the suit.

Treating the judgment as a joint liability, the defendant Adams cannot say that a new cause of action is for the first time set out in the amendment to the complaint as against him. It has been held in Kansas that an action on a judgment against two or more may be maintained against any one of the defendants; that it is in effect a joint and several obligation. (*Read* v. *Jeffreys,* 16 Kan. 534.) The contrary seems to be intimated in *Barnes* v. *Smith,* 16 Abb. Pr. 420. It is not necessary here to decide the question, but if the Texas judgment was the several contract of the defendant Adams, it is apparent that an amendment which merely added to the description of the judgment a statement that others as well as Adams were judgment debtors did not affect or change the liability of Adams, or constitute a new cause of action against him.

The respondent further contends that the court below was justified in granting a new trial, the evidence being insufficient to sustain the finding, because the judgment roll, read in evidence, showed an action and judgment of the court in Texas against Adams, Collins & Co., *as partners,* and upon a partnership liability. But the judgment was simply a judgment against Adams, Collins, Dalrymple, and Kennedy. We refrain from saying that such a judgment, upon a declaration charging defendants on a contract made or liability incurred by them as partners, was strictly regular. It is enough that the judgment was entered, and if erroneous, it cannot here be reviewed.

Another point urged by respondent is, that the Superior Court erred at the trial in overruling defendant's objections to the evidence offered by the plaintiff. Assuming that the specifications of error in the statement for new trial are sufficiently particular, the evidence re-

ferred to as offered by the plaintiff is the record of the
Texas judgment. When that record was offered, the de-
fendant's objections to it—other than those already inci-
dentally referred to—were:—

"1. Because the document shows a judgment in favor
of M. F. Lewis, *executrix of the estate of Nat. Lewis, deceased,*
and it appears therefrom that the plaintiff, as executrix,
appointed in Texas, has no jurisdiction nor right to
maintain an action in this state.

"2. Because the court has treated this action as an
action in the name of M. F. Lewis as an individual, and
has held the description of plaintiff's official capacity to
be mere surplusage."

Section 1294 of the Code of Civil Procedure, so far as
it relates to any question before us, is: "Wills must be
proved and letters testamentary or of administration
granted: . . . . 3. In the county in which any part of
the estate may be, the decedent having died out of the
state, and not resident thereof at the time of his death."
And sections 1667 and 1913 of the same code read: "1667.
Upon application for distribution, . . . . and if it is
necessary, . . . . that the estate in this state should be
delivered to the executor or administrator in the state or
place of his residence, the court may order such delivery
to be made," etc. "1913. The effect of a judicial record
of a sister state is the same in this state as in the state
where it was made, except . . . . that the authority of
. . . . an executor or administrator does not extend be-
yond the jurisdiction of the government under which he
was invested with his authority."

Respondent contends that—by virtue of the foregoing
provisions—the plaintiff cannot maintain this action,
either in her official capacity or as an individual, and
that the action could only have been prosecuted by one
to whom letters were issued under the third subdivision
of section 1294.

It is claimed this view is supported by *Dial* v. *Gary*, 14

S. C. 573.   In that case, a resident of Massachusetts having died in that state, possessing a bond and mortgage executed by a resident of South Carolina, the administrator appointed in Massachusetts assigned the securities to a resident of South Carolina.   The Supreme Court of South Carolina held that an action could not be maintained on them by the assignee in that state.   The action was not upon a judgment recovered in Massachusetts.

Respondent also refers to Story's Conflict of Laws.   In section 513 of that work, Judge Story says it has become a doctrine of the common law that no suit can be brought or maintained by any executor or administrator, *in his official capacity*, in the courts of any other country than that from which he derives his authority.   But at section 522 the learned author remarks that in contemplation of law there is no *privity* between persons to whom administration is granted in different states; that a judgment recovered by a foreign administrator against the debtor of his intestate will not form the foundation of an action by an ancillary administrator in another state; but the foreign administrator himself might in such case maintain a *personal* suit against the debtor in another state, because the judgment would, as to him, merge the original debt, and make it personally due to him in his own right, he being responsible therefor to the estate.

In *Attorney-General* v. *Bouwens*, 4 Mees. & W. 171, Lord Abinger, speaking of conflicts of jurisdiction between different ordinaries, said it had been established that judgment debts were assets for the purposes of jurisdiction where the judgment is recorded.

Mr. Freeman, citing authority, thus lays down the rule with respect to the right of a foreign administrator to sue personally in this state on a judgment recovered by him as administrator out of this state: "A debt due to the estate of a deceased person, if sued upon and recovered by an administrator, is in law the debt of him who

recovers it, and in whose name the judgment is rendered. He holds the legal title, subject only to his trust as administrator. He may sue upon the debt in his own name without describing himself as administrator, and may therefore pursue the judgment defendant in a different state from that in which letters of administration were issued." (Freeman on Judgments, sec. 217.)

That the local administrator could not maintain an action on a judgment recovered by a foreign administrator, as such, in another state was decided in *Talmage* v. *Chapel*, 16 Mass. 71. There the court held: 1. The judgment debt was at law due to the foreign administrator, he being answerable to the estate of the intestate; 2. That the ancillary administrator appointed in Massachusetts could not maintain an action on the judgment, not being privy to it. Counsel for respondent herein criticise that decision, saying: "It is absurd to say that by recovering a judgment the administrator becomes chargeable with it." And counsel claim that an executor or administrator appointed here could sue here on the judgment, because the foreign judgment is in favor of the *estate* which such an executor or administrator would represent. But the Supreme Court of Massachusetts did not hold that the foreign administrator was *chargeable* with the judgment in the sense that he was bound absolutely to satisfy and pay it, but that he was answerable to the estate to the extent of using all reasonable efforts to collect the judgment. It would seem sufficiently plain that the Massachusetts administrator was not in privity with the title of the foreign administrator to the judgment, or with that of the person who had recovered the judgment, and to whom at law the judgment debt was personally due.

In *Biddle* v. *Wilkins*, 1 Pet. 686, the plaintiff, as administrator of one W., had recovered a judgment against the defendant in the District Court of the United States for Pennsylvania. He instituted a suit on the judgment in

the District Court of the United States for Mississippi. The defendant pleaded that he had been appointed administrator of the estate of W. by the Orphans' Court of Adams County. The Supreme Court of the United States held that the debt due upon the judgment obtained in Pennsylvania by the plaintiff as administrator of W.'s estate was due to him in his *personal* capacity, and it was immaterial whether the defendant was or was not appointed administrator of the estate of W. in the state of Mississippi.

In *Low* v. *Burrows,* 12 Cal. 188, the Supreme Court of this state said:—

"The second objection is equally untenable. We concede that the administrator has power over only those assets within the state where letters are granted; and we might concede that in case of notes, bonds, etc., on debtors who live and have their property beyond the jurisdiction, the administrator has no jurisdiction or dominion. But this is not the case in respect to judgments. There can be no doubt if a debtor against whom the intestate in his lifetime obtained judgment, though at the time of the death of the intestate the debtor was beyond the jurisdiction, afterwards came within the jurisdiction, the administrator might proceed to collect the money from him. The effect of a judgment, as such, unlike a note, is confined to the state where rendered. It is therefore record evidence of a debt. It may be sued on, it is true, out of the state. But it is not easy to see how an administrator of the creditor in California could take to himself as assets a judgment remaining on record in New York merely from the fact that the debtor happened for the time being to reside in California. If the debtor went back to New York, or had property there, it is clear that the California administrator could not collect the money. If he collected anywhere, it would not be by virtue of the judgment in New York vesting in him any title to it, but merely because the

transcript of the judgment gave him evidence upon which he might sue. The judgment is a record, and for any use to be made of it, or any power to enforce it, by execution or other process, must belong to the administrator in New York, or this anomaly would result: that the administrator in California would own the judgment for the purpose of suing on it in California, and the administrator in New York would own it for the purpose of collecting it by issuing execution on it in New York. We think no such doctrine can be maintained."

According to the principles recognized by all the authorities, the judgment debt herein sued was a debt at law due to the plaintiff personally, and she was fully authorized to bring and prosecute this action.

We find nothing in the provisions of the Code of Civil Procedure that affects or modifies the general principles of law which control and determine the rights of the parties hereto. Section 1913 is merely declaratory of the rule of the common law that an executor or administrator, *as such,* has no power which he can employ extraterritorially. The third subdivision of section 1294 allows letters to issue in the county "in which any part of the estate may be." But when the plaintiff recovered the judgment in Texas, the simple contract debt ceased to exist. It was merged in the judgment. The judgment was in Texas, and the simple debt was not an asset in this state which an executor or administrator here appointed could sue to recover. The Texas judgment would constitute a perfect defense to an action brought here on the original demand.

As to the second of the objections to plaintiff's evidence as above enumerated, the court below was justified "in treating the action as an action in the name of M. F. Lewis as an individual, and in holding the description of plaintiff's official capacity to be mere surplusage."

When it is not necessary for a plaintiff to sue as executor or administrator, all averments in his complaint

in relation to his official capacity may be rejected. (*Owen* v. *Frink*, 24 Cal. 171.) And in *Biddle* v. *Wilkins*, *supra*, the Supreme Court of the United States holds that if the plaintiff who has recovered a judgment as administrator in one jurisdiction, and who brings an action on the judgment in another, names himself as administrator in the last action, the averment may be disregarded.

Order reversed.

THORNTON, J., SHARPSTEIN, J., ROSS, J., and MORRISON, C. J., concurred.